# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 20, 2007
NOT TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2005-SC-000948-MR

DATE 10-11-07 Eu-R-Crow: #p.c.

HUBERT UMBERTO JOHNSON      APPELLANT

V.

ON APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE GARY D. PAYNE, JUDGE
NO. 05-CR-000254-001

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, Hubert Umberto Johnson, was convicted by a Fayette Circuit Court jury of first-degree manslaughter, first-degree arson, and tampering with physical evidence. For these crimes, Appellant was sentenced to fifty years imprisonment.[1] He now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). Appellant asserts three main arguments on appeal: 1) that the prosecutor in her closing argument misstated the law thus essentially negating the jury's consideration of the self-defense and imperfect self-defense instructions, 2) that Appellant was not provided with the opinion of the fire-causation specialist which kept him from properly supporting his version of the

---

[1] The jury sentenced Appellant to twenty years for manslaughter, thirty years for arson, and five years for tampering, and recommended that those sentences run concurrently for a total of thirty years imprisonment. However, the trial judge ordered that the sentences for manslaughter and arson run consecutively and the sentence for tampering run concurrently with those sentences for a total of fifty years imprisonment.

facts, and 3) that improper hearsay evidence was admitted which kept Appellant from properly confronting evidence that the victim was alive at the time he reached the hospital. For the reasons set forth herein, we affirm Appellant's convictions.

On the morning of December 18, 2004, Appellant got into an altercation with Patrick Connor (Connor). Before the altercation the men had argued over marijuana, which bedroom Appellant and his girlfriend, Melissa Pauley (Pauley), should occupy, and the cleanliness of a bathroom. Apparently all of the arguing (and Connor's intoxication) led Connor to attack Appellant and attempt to choke him. During the fight, Appellant gained control of a hammer and hit Connor with it. Pauley testified at trial that Appellant beat Connor, forcing him to the floor before grabbing the hammer from another part of the room. Appellant hit Connor with the hammer around 40 times.

With Connor beaten to the floor, Appellant and Pauley put his bloody clothes and the hammer in garbage bags and left the house. As they were leaving, Appellant started a fire, either accidentally or intentionally, causing major damage to the house. Appellant and Pauley then disposed of the garbage bags at a near-by dumpster.

## I. The prosecutor's statements were proper, and did not negate the jury's consideration of Appellant's self-defense and imperfect self-defense instructions

One of Appellant's theories at trial was that he acted in self-defense because Connor attacked him. To support this argument, Appellant alleged that Connor first attacked him with his hands and then threatened him with a shotgun.

2

Because of this, Appellant claimed that he acted in self-defense, or if the jury thought the usage of the hammer was extreme force, he claimed imperfect self-defense.

During her closing arguments, the prosecutor responded to Appellant's self-defense claim by arguing that when Appellant picked up the hammer and beat Connor, there was no true threat justifying self-defense because Connor was drunk and subdued. The prosecutor stated, "There was no threat that warranted him pulling out that hammer, none, no threat, and therefore he was not entitled to use self-protection. There was no threat then and there of death or serious physical injury." The prosecutor continued this strain of reasoning by attacking the idea that Appellant would have had any belief to act in self-defense when picking up the hammer. The prosecutor ultimately stated, "Well, we've already talked about why he wasn't privileged to act in self-protection, to use this hammer. Fists, yes, no doubt. But you pick up a hammer and introduce it into that situation; he was not privileged to act in self-protection." Upon objecting to the prosecutor's remark, Appellant's trial counsel argued that the prosecutor's statement misstated the law on self-defense and in effect negated the jury's consideration of Appellant's self-defense claim. The prosecutor replied that, "For the erroneous belief to kick in, he has to truly believe that at the time he picked up that hammer, he has to truly believe he needed to use it. And I'm arguing that he didn't believe he needed to use it." The trial court ultimately overruled the objection.

The prosecutor's statements in her closing argument do not amount to a misstatement of the law or error. A prosecutor is allowed broad leeway in

constructing an argument and "may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." Slaughter v. Commonwealth, 744 S.W.2d 407, 412 (Ky. 1987); see also Hunt v. Commonwealth, 466 S.W.2d 957, 959 (Ky. 1971) ("a Commonwealth's Attorney is entitled to draw reasonable inferences from the evidence, to make reasonable comment upon the evidence and to make a reasonable argument in response to matters brought up by the defendant"); Koonce v. Commonwealth, 452 S.W.2d 822, 826 (Ky. 1970) ("There is nothing improper in the Commonwealth Attorney expressing his opinion as to the guilt of the defendants as long as it is based upon the evidence in the case.")

Here, the prosecutor's statements referred to the Commonwealth's theory of the case that Appellant did not have the requisite state-of-mind to justify self-defense at the time he began to use the hammer. She was not trying to comment that the mere use of a hammer completely precluded a self-defense instruction. These statements were supported by evidence developed at trial, namely the testimony of Pauley who stated that Appellant had subdued Connor, walked away from him to pick up the hammer, and then commenced beating him with it. Since the prosecutor was merely trying to present the facts as the Commonwealth believed them to be, no misstatement of law occurred.

It is important to note that even if the prosecutor's statements confused the jury in regards to Appellant's claim of self-defense, the jury instructions provided a correct statement of the law. The jury instructions properly gave Appellant a self-defense instruction but stated that if the jury believed that Appellant was mistaken in his use of force against Connor, or used too much

4

force, he could be found guilty of lesser included offenses due to imperfect self-defense. Because of the correct jury instruction, any theoretical harm to Appellant was mitigated. Matheney v. Commonwealth, 191 S.W.3d 599, 606 (Ky. 2006) (holding that, despite a misstatement of law from the prosecutor, any damage was mitigated by the fact that the jury instructions were proper and juries are presumed to follow only the evidence and instructions provided). Hence, there is no error here.

## II. Appellant had adequate notice of the conclusions of the fire-causation specialist

For his second assignment of error, Appellant claims that he was denied a fair trial because in discovery he was not provided the opinion of the prosecution's expert in fire-causation that a cigarette did not start the arson which burned Connor's house. Appellant believes that without this discovery he was denied the opportunity to refute the expert's final conclusions, either through his own expert witnesses or cross-examination. A claim of error regarding a trial judge's decision about discovery is reviewed under an abuse of discretion standard. Berry v. Commonwealth, 782 S.W.2d 625, 627-628 (Ky. 1990).

Prior to the fire-causation expert's testimony, Appellant requested a bench conference and complained that the prosecutor in her opening statement stated that the expert would testify that the fire was intentionally set. Appellant stated that he did not have a report from the fire-causation expert drawing this conclusion or showing how he came to said conclusion. In response, the prosecutor referenced a supplemental report prepared by another fire investigator, Captain Branham, which stated his opinion that the fire patterns in

5

the chair are consistent with the testimony Pauley gave in regards to how the fire began – in particular that Appellant took her lighter and set the chair on fire.

Appellant, however, believed the language in the main report and supplemental report was imprecise and did not preclude the possibility that the fire was started accidentally by Appellant tossing a lit cigarette onto a chair in the house. The trial judge believed that was a point Appellant could bring out in cross-examination and overruled the objection. The fire-causation expert ultimately testified that burn patterns at the arson scene indicated that the fire was started in a chair and that a lit cigarette could not have been the cause of the fire.

From the record presented, Appellant had more than adequate notice of the ultimate conclusion reached by the fire-causation expert. Not only did the supplemental report mention that the burn marks supported Pauley's version of how the fire started, but a uniform citation prepared within days of the murder and signed by Captain Branham indicated that all burn patterns at the scene were consistent with Pauley's version.[2] Further, at a bench conference prior to the beginning of trial, the prosecutor indicated that a key witness was not yet present in the courtroom. The prosecutor stated that the witness was important to the Commonwealth because she established a time frame for how quickly the fire began. This was meant to support the fire-causation expert's opinion that the fire could not have been started by a lit cigarette. Finally, the Appellant's counsel

---

[2] The citation stated: "Pauley states she gave Johnson a cigarette lighter and he later told her he used the lighter to set a chair on fire in the front room of 115 Alabama Ave. This to cover a murder he had committed at the same house. All patterns found at scene consistent with statements made. /s/ Capt. Branham, Fire"

6

even read from a transcript while cross-examining Pauley which indicated the arson investigator's doubt regarding the cigarette theory. All of this information taken together should have given or shown that Appellant had adequate notice of the premises of the fire-causation expert. See Milburn v. Commonwealth, 788 S.W.2d 253, 255-256 (Ky. 1989) (holding that an expert could testify regarding his opinion although not included in his report, because his opinion was based on premises included in the initial investigation); Barnett v. Commonwealth, 763 S.W.2d 119, 123 (Ky. 1988) (holding that it was reversible error to allow an expert to testify regarding an opinion based upon a premise that was not disclosed or unknown to the defendant).

While Appellant further argues that RCr 7.24(1) requires the Commonwealth to disclose "results or reports of physical mental examinations, and of scientific tests or experiments made in connection with the particular case," such information must only be disclosed "[u]pon written request." It does not appear from the record that any such written request was made. Additionally, if there was such a request for all information regarding the fire-causation expert, and if the Appellant knew it was not complied with prior to trial, Appellant's declaration that he was ready at the beginning of trial waived any right to now complain. See Barclay v. Commonwealth, 499 S.W.2d 283, 285 (Ky. 1973) ("If there was non-compliance with the order to furnish information the response that Barclay was ready for trial was a waiver."). There is no error here.

## III. Any error in the admission of hearsay evidence that the victim was alive when he reached the hospital was cured and harmless

Appellant finally argues that the admission of hearsay evidence from Officer Tim Russell regarding whether Connor was alive when he reached the hospital prevented him from properly defending against the charge of first-degree arson. At trial, Officer Russell testified that he saw a heart monitor hooked up to Connor at the hospital which indicated that Connor may have been alive when the fire started at his house. Officer Russell further testified that later in the night Connor was deceased or pronounced deceased. Appellant objected to Russell's statement arguing that a determination of whether Connor was alive at the hospital is a critical factor that needs to be determined for a first-degree arson conviction. The trial court, while overruling Appellant's motion for a mistrial, agreed to give the following admonishment to the jury, "[b]efore we proceed, I will admonish the jury that the last answer, if you will recall, whether he was deceased or not, this witness is not qualified to make that determination so you are to disregard the answer from this witness."

Appellant argues that Officer Russell's statements that Connor may have been alive at the hospital proves a critical fact necessary for Appellant to be convicted of first-degree arson – namely that to be guilty of first-degree arson the fire must be set with someone living inside the structure. However, KRS § 513.020 does not include such a requirement. KRS § 513.020(1) states in pertinent part:

> A person is guilty of arson in the first degree when, with intent to destroy or damage a building, he starts a fire or causes an explosion, and; (a) The building is inhabited or occupied or *the person has reason to believe the building may be inhabited or occupied*

8

(emphasis added). So for Appellant to be convicted of first-degree arson, he only has to believe someone was alive inside of the house. There was adequate evidence presented at trial to indicate that Appellant did believe someone was alive in the house when the fire was set. Pauley in her testimony indicated that as she left the house with Appellant after the fight, she heard Connor moaning and muttering. Even more importantly, in Appellant's video taped statement played during trial, he indicated surprise that Connor was deceased and indicated that Connor was breathing and moving after the struggle.

Further, any negative effect Officer Russell's testimony caused to Appellant was cured by the admonishment the trial judge gave to the jury. "A jury is presumed to follow an admonition to disregard evidence; thus, the admonition cures any error." Combs v. Commonwealth, 198 S.W.3d 574, 581 (Ky. 2006). Hence the trial judge's admonishment telling the jury to disregard Officer Russell's testimony regarding whether Connor was alive or dead cured any error.

For the reasons set forth herein, the judgment and sentence of the Fayette Circuit Court is affirmed.

Lambert, C.J.; Cunningham, Minton, Noble, Schroder and Scott, JJ., concur. Abramson, J., not sitting.

COUNSEL FOR APPELLANT:

Randall L. Wheeler
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, Kentucky 40601

COUNSEL FOR APPELLEE:

Gregory D. Stumbo
Attorney General

Jeffery A. Cross
Assistant Attorney General
Office of Criminal Appeals
Attorney General's Office
1024 Capital Center Drive
Frankfort, Kentucky 40601